
FILED
SUPERIOR COURT
OF GUAM

2014 SEP -2 PM 4: 22

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

UNIFIED INTEREST,

Plaintiff,

v.

PACAIR PROPERTIES, INC.,

Defendant.

CIVIL CASE NO. CV0347-13

**DECISION AND ORDER**

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on June 18, 2014, on Plaintiff Unified Interest's ("Plaintiff") Motion for Summary Judgment. Attorney Georgette Bello Concepcion was present on behalf of Plaintiff. Attorney F. Randall Cunliffe was present on behalf of Defendant PacAir Properties, Inc. ("Defendant"). Having reviewed the pleadings and the arguments presented, the court now issues its Decision and Order.

## BACKGROUND

This case fundamentally involves an alleged contract entered into between Plaintiff, through Anthony Lichtl ("Mr. Lichtl"), and Defendant, through Frank P. Arriola ("Mr. Arriola"), whereby Plaintiff was obligated to provide specialized real estate consulting services to Defendant for the duration of one (1) year and in return Defendant was to pay Plaintiff 1% of the total gross rent for the guaranteed lease term for all lease transactions consummated during the parties' contract period. (*See* Compl. at 2 ¶ 4, Mar. 21, 2013). On or about October 7, 2009, Plaintiff sent Defendant an email requesting information about Defendant's office space in

Guam. (Decl. of Frank P. Arriola ("Arriola Decl.") at ¶ 2; Ex. 4, Apr. 29, 2014). On November 24, 2009, Defendant sent an email to Plaintiff, indicating an interest in renting office space to the United States Department of Agriculture ("USDA"). *Id.* at ¶ 3; Ex. 3, Apr. 29, 2014. After several communications through email, it is undisputed that Plaintiff met with Defendant in San Diego, California on October 18, 2011, and executed the agreement at issue. (Decl. of Anthony Lichtl ("Lichtl Decl.") at ¶ 4; Ex. A, Mar. 31, 2014). According to Plaintiff, On October 18, 2011, Plaintiff emailed Defendant a report detailing potential business opportunities available to Defendant as required under the parties' contract. *Id.* at ¶ 5; Ex. B. Further, Plaintiff states that on or about August 17, 2011, and then again on October 18, 2011, Plaintiff provided Defendant via email a process flowchart and corresponding consulting tasks. *Id.* at ¶ 11; Ex. C, Mar. 31, 2014). Defendant claims that when he signed the agreement, there were no documents entitled "consulting task" attached or provided to him that day, nor was he aware that "these were the properties[sic] 'consulting tasks' until after the lawsuit was filed and Mr.Lichtl indicating that the flow chart services . . . was what he deemed to be the 'consulting tasks.'" (Arriola Decl. at ¶ 6, Apr. 29, 2014). Additionally, Defendant stated that he received an email from Mr. Lichtl on October 20, 2011, which contained the one page agreement without any "consulting tasks, the offered details and an invoice." *Id.* at ¶ 7; Ex. 8. Next, Defendant also received a document from Mr. Lichtl, dated October 18, 2011, where Mr. Lichtl indicated: "as a former GSA employee, important post-employment restrictions . . . [s]o long as my services are to act behind the scenes as a consultant and not a representative of PacAir, I will not be in conflict with these standards." *Id.* at ¶ 7. Defendant states that when discussing the matter with Mr. Lichtl, and when executing the agreement, Defendant had no idea that there were restrictions on his involvement in representing PacAir. *Id.* at ¶ 9. Plaintiff states that he made it clear to Defendant that he will not and cannot appear on its behalf before the General Services Agency ("GSA") due to Plaintiff's prior employment and applicable federal law and instead can only work "behind-the-scenes." (Lichtl Decl. at ¶ 11; Ex. B, Mar. 31, 2014).

On or about June 14, 2012, Defendant was awarded a lease contract by the U.S. General Services Administration in excess of $8,000,000.00. *Id.* at ¶ 6. Also, on July 3, 2012, Plaintiff

learned that Defendant was awarded a lease extension contract by the U.S. General Services Administration at the total gross contract value of $171,564.50. *Id.* at ¶ 7. Defendant states that the $171, 564.50 contract that Mr. Lichtl refers to is a contract between the GSA and GIAA, not Defendant. (Arriola Decl. at ¶ 14, Apr. 29, 2014). Plaintiff has requested on several occasions that Defendant comply with its obligations to compensate Defendant accordingly pursuant to the agreement. (Lichtl Decl. at ¶ 9). Defendant has refused and continues to refuse to pay plaintiff, in whole or in part. *Id.* at ¶ 10.

On March 21, 2013, Plaintiff filed a civil complaint ("Complaint") against Defendant for breach of contract. On April 16, 2013, Defendant filed an answer to Plaintiff's Complaint denying the allegations of the complaint and asserting two affirmative defenses; failure to state a cause of action upon which relief can be granted and the doctrine of unclean hands. On March 31, 2014 Plaintiff filed a Motion for Summary Judgment and Memorandum of Points and Authorities in Support of Motion ("Mot."). Plaintiff argues that there are undisputed material facts that Defendant breached their contract. On April 29, 2014, Defendant filed an Opposition to the Motion for Summary Judgment. Defendant denies that there was a valid contract. In addition, Defendant asserts the affirmative defense of unclean hands in that Plaintiff allegedly violated 18 USC § 207. On May 12, 2014, Plaintiff filed its Reply to the Opposition to Motion for Summary Judgment. Plaintiff argues that Defendant failed to file a timely opposition, and reasserts its argument that there are undisputed material facts of Defendant's breach of contract.

## DISCUSSION

### I. Untimely Filing

Plaintiff's first argument is that Defendant's opposition was untimely. The record shows that Plaintiff filed and served its moving papers on March 31, 2014. Under Local Rule CVR 7.1(d)(1)(A), Defendant had 28 days to file its opposition. In this case, Defendant filed its opposition on April 29, 2014, 29 days after Plaintiff's Motion for Summary Judgment and without leave of court. CVR 7.1(f) states that papers not timely filed by a party shall not be considered without leave of court. In *Petition of Quitugua v. Flores*, 2004 Guam 19 ¶ 24, the

Supreme Court of Guam established how courts should treat a party's untimely filing or failure to file an opposition:

> [We] emphasize that the failure to file a written opposition to a motion, the filing of a notice of non-opposition to a motion, or the disregard of untimely filed papers, *does not require [the] court to automatically grant the motion and is not dispositive of the motion itself. The court has a duty to analyze the merits of the motion before rendering its decision* (emphasis added).

*Mano v. Mano*, 2005 Guam 2 ¶ 14. This court recognizes the importance of timely filings. In this case, in the interest of justice and barring any indications of bad faith, this court will follow the Supreme Court's direction and analyze the merits of Defendant's opposition.

## II. Summary Judgment Standard

Pursuant to Rule 56(c) of the Guam Rules of Civil Procedure ("GRCP"), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." GRCP 56(c). A genuine issue exists when "there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *Iizuka Corp. v. Kawasho Int'l (Guam) Inc.*, 1997 Guam 10 ¶ 7 (citing *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987)). The factual dispute must concern a material fact. *Id.* "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit . . . [d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *Id.* "If the movant can demonstrate that there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the [pleadings], but must produce at least some significant probative evidence tending to support the [pleadings]." *Id.* ¶ 8. (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, (1986)). "In addition, the court must view the evidence and draw inferences in the light most favorable to the non-movant." *Edwards v. Pacific Financial Corp.*, 2007 Guam 27 ¶ 7. "The court's ultimate

inquiry is to determine whether a 'specific fact' set forth by the nonmoving party, coupled with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *Iizuka*, 1997 Guam 10 ¶ 8 (quoting *T.W. Elec. Serv.*, 809 F.2d at 631). "Stated simply, there is a trial issue if there is sufficient evidence for a jury to return a verdict in the non-moving party's favor." *Kim v. Hong*, 1997 Guam 11 ¶ 8 (citing *Anderson*, 477 U.S. at 250).

### III.    Breach of Contract

To succeed on a breach of contract claim, Plaintiff is required to establish: (1) the existence of a contract; (2) Plaintiff's performance on the contract, or excuse for nonperformance; (3) Defendant's breach; and (4) the resulting damage. *First Commercial Mortgage Co. v. Reece*, 108 Cal.Rptr.2d 23, 33 (Cal. Ct. App. 2001). In this case, Plaintiff alleges that a valid contract exists and that Defendant's breach caused damage to Plaintiff in the amount of at least $46,817.90 including a $500 retainer fee. (Mot. at 5).

Plaintiff and Defendant disagree as to whether the agreement signed by both parties is a valid contract. As set forth by the Guam Supreme Court, the "three recognized elements of a contract are an offer, acceptance, and consideration." *Mack v. Davis*, 2013 Guam 13, ¶ 33. It is undisputed that both parties signed the agreement. (Mot. at 3; Decl. of Georgette Bello Concepcion; Ex. A, Mar. 31, 2014). The issue in this case is one of interpretation and whether all the essential terms were included in the contract.

Guam statutes provide guidance as to how contracts are to be interpreted. Specifically, 18 GCA § 87104 provides that: "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." 18 GCA § 87104. In addition, 18 GCA § 87105 directs that: "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however to the other provisions of this Chapter." 18 GCA § 87105. The Supreme Court of Guam has reaffirmed this jurisdiction's adherence to the traditional approach of Contract Interpretation. *See Takagi & Assocs., Inc. v. Int'l Ins. Underwriters,* 2006 Guam 4 ¶ 23 ("Therefore, since the four corners of

the contract address the situation in which a commission is returned, there was no need to look to industry practice or custom, or any other extrinsic evidence and the lower court erred."); *Guam United Warehouse Corp. v. DeWitt Transp. Servs.*, 2003 Guam 20 ¶ 24 ("[W]e 'look to the ... four corners to determine the parties' intentions, which are controlling.'... 'If the language within the four corners of the contract is unambiguous, then a court does not resort to extrinsic evidence of the contract's meaning, and a court determines *the parties intentions from the plain meaning of the contractual language as a matter of law.*'") (internal citations omitted). In the instant case, the language of the agreement provides:

> The purpose of this agreement is to outline the services and fee schedule involved in the GSA lease requirement. Unified Interest will act as the dedicated Government Real Estate consultant for **PacAir Properties** for the duration of 1 year from the date of this contract's execution.

> For the consulting services offered by Unified Interest (see document titled "Consulting Tasks"), a retainer fee of **$500** is due within 15 days upon full execution of this contract. Additionally, the owner agrees to a **1% fee** of the total gross rent for the guaranteed lease term; payable only if a lease transaction is consummated.

The Defendant argues that the contract is not valid because Plaintiff never provided a "consulting task" document explaining how performance was to be completed by Plaintiff. (Opp'n Mot. at. 2) Defendant cites *Mobile Oil v. Tendido* arguing that an offer must include essential terms to make the contract enforceable. *See Mobile Oil v. Tendido*, 2004 Guam 7 ¶ 35. ("Where an offer does not include an essential term, the contract is unenforceable."). Defendant argues that the failure to provide the "consulting tasks" document is essential to the agreement. (Opp'n Mot. at 2).

In this case, the agreement states that Unified Interest is to provide "consulting services" and references a document entitled, 'Consulting Tasks.'" (Lichtl Decl.; Ex. A). Applying our jurisdiction's "plain meaning" or traditional approach to the facts of this case, "consulting services" means, "The providing of expert knowledge to a third party for a fee. Consulting is most often used when a company needs an outside, expert opinion regarding a business

decision. For example, a company seeking to sell its products abroad may look for a consultant familiar with the business practices of the target country. The consultant will tell the company what best practices should be followed, what to expect from customers, and how to deal with foreign regulations." (http://www.businessdictionary.com/definition/consulting.html)

Plaintiff delivered several documents to Defendant describing Plaintiff's plan of action; research of Government leases, etc. (Lichtl Decl.; Ex. B and C). Plaintiff's course of performance reinforces the plain meaning of "consulting services." However, the contract references "consulting services" with the statement "see document titled, 'Consulting tasks.'" Interpreting the plain language of the contract, Plaintiff seems to attach a special meaning to the term "consulting services." *See Wasson v. Berg*, 2007 Guam 16 ¶ 26, ("as words in a contract are generally to be accorded their ordinary meanings, unless specifically stated otherwise in the contract."). If Plaintiff didn't want to attach a special meaning to the term "consulting services," they would not have referenced the "consulting tasks" document into the contract language. Plaintiff argues as unfounded, Defendant's position that the agreement upon which Plaintiff basis its claim contained no consulting tasks which set forth his duties and obligations under the purported agreement. (Mot. at 11). Plaintiff maintains that Defendant was provided a "process flowchart and corresponding consulting tasks" document as early as August 17, 2011 and again on October 18, 2011. (Lichtl Decl. at ¶ 11, Ex. C, Mar. 31, 2014). Defendant maintains that there were no documents entitled "consulting task" attached or provided to him on October 18, 2011. (Arriola Decl. at ¶ 6, Apr. 29, 2014).

The plain language of the contract controls in this case. The Defendant signed the agreement with the special meaning of "consulting services" indicated by reference to a separate "consulting tasks" document. The declarations filed demonstrate a dispute exists over whether the consulting tasks document was sent by Plaintiff and received by Defendant at or around the time the agreement was executed. Viewing the evidence in a light most favorable to Defendant, such dispute presents a genuine issue of material fact, relative to the essential terms being included in the contract and, therefore, the Court is precluded from granting summary judgment for Plaintiff on that basis.

## IV. Unclean Hands

The doctrine of unclean hands is an affirmative defense raised by the non-prevailing party to prevent a prevailing party from obtaining relief. *See Guam Top Builders, Inc. v. Tanota Partners*, 2012 Guam 12 ¶ 26 (citations omitted) ("Traditionally, the doctrine of unclean hands is invoked when one seeking relief in equity has violated conscience, good faith or other equitable principles in his prior conduct." *Fibreboard Paper Prods. Corp. v. E. Bay Union of Machinists*, Local 1304, 39 Cal. Rptr. 64, 96 (Dist. Ct. App. 1964) (citations omitted)). "Any unconscientious conduct in the transaction may give rise to the defense." *Burton v. Sosinsky*, 250 Cal. Rptr. 33, 41 (Ct. App. 1988) (citations omitted)). Whether the defense of unclean hands should bar a remedy otherwise available depends upon an analysis of "the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries." *See Main v. Doctor's Co.*, 272 Cal. Rptr. 250, 256 (Ct. App. 1990).

Defendant suggests that Mr. Lichtl may have violated 18 USC § 207 when Plaintiff communicated with a GSA Government official. The permanent restrictions section of Title 18 § 207 state that a former officer or employee of the executive branch or other agency may not knowingly make, with the intent to influence, any communication in which the person participated personally and substantially as such officer or employee. 18 USC § 207(a)(1)(B). Under that specific section, the evidence provided to the court does not indicate Plaintiff communicated with another employee of the executive branch or agency with the intent to influence that employee as an officer or employee of the GSA. However, the two-year restrictions section of Title 18 § 207 provides that a person subject to the permanent restrictions may not communicate or appear with the intent to influence within 2 years after termination of employment, before any officer or employee in which they know or reasonably should know was actually pending under his or her official responsibility as such officer or employee within a period of 1 year before the termination of his or her service or employment. 18 USC § 207(a)(2)(B).

In this case, Defendant, through Mr. Arriola, submits that it communicated with Mr. Lichtl while he was with GSA about office space for the USDA. (Arriola Decl. at ¶ 2-3, Apr.

29, 2014). Next, on or about August 16, 2011, Mr. Lichtl contacted Defendant from his position with Unified Interest, seeking to assist Defendant in renting office space to the USDA. *Id.* at ¶ 4. On August 23, 2011, Defendant, through Mr. Arriola indicated to Mr. Lichtl that there was a meeting scheduled that day with Ryan Geertsma of the GSA. (Arriola Decl.; Ex. 7, Apr. 29, 2014). Next, Defendant submits that sometime after October 18, 2011, it learned that Mr. Geertsma and Mr. Lichtl were or had been roommates. *Id.* at ¶ 12. Defendant points out that Mr. Lichtl acknowledged that he has contacted Mr. Geertsma on numerous occasions. (Opp'n at 5). Finally, Defendant argues that Exhibit 7 clearly shows contact between Mr. Lichtl and Mr. Geertsma regarding Guam Projects. (Def's. Ex. 7, Apr. 29, 2014).

Plaintiff argues that Defendant does not set forth any evidence that the anticipated projects presented by Plaintiff were ones that Plaintiff "personally and substantially" participated while employed with the GSA. Plaintiff submits that the office space for the USDA as alleged by Defendant is different than the one Mr. Lichtl worked on in 2009. (Reply at 8; Lichtl Decl., Ex. 1 and 2, May 12, 2014). Mr. Lichtl's project "9GU2004" was posted to fbo.gov on November 10, 2009 for 20,232 rentable square feet and 25 parking spaces for USDA for 15 years estimated for occupancy on November 1, 2011. *Id.* Plaintiff argues that the project Ryan Geertsma worked on 8GU2008, was posted to fbo.gov on January 13, 2013 for 25,000 square feet and 30 parking spaces for USDA/VA for 10 years estimated for occupancy on September 1, 2012. *Id.*

Defendant has demonstrated that has been past communication between Plaintiff and the GSA representative for Guam, Mr. Geertsma. (Arriola Decl.; Ex. 7). The question is whether the communication amounts to a violation of 18 USC § 207, and whether this conduct violates conscience, good faith or other equitable principles in their prior conduct. In rendering its decision on a motion for summary judgment, a court must draw inferences and view the evidence in a light most favorable to the non-moving party. *See Bank of Guam v. Flores*, 2004 Guam 25. In viewing the evidence in a light most favorable to the Defendant, the Court finds that there are genuine issues of material fact with regard to Plaintiff's potential violation of 18 USC § 207, which goes toward Defendant's affirmative defense. For the above reasons, the

court, finds that there are genuine issues of material fact regarding the interpretation of "consulting services," and Defendant's affirmative defense of unclean hands that may bar a remedy otherwise available.

///

///

///

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for summary judgment is DENIED. Schedule appearance is set for ___10-03-___, 2014 @ 9:20 am

**IT IS SO ORDERED** this _2nd_ day of September, 2014.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

**SERVICE VIA COURT BOX**
I acknowledge that a copy of the
Original hereto was placed in the
court box of:

Atty. Georgette Bello Concepcion
Atty. Cruz

Date: 9/2/14 Time: 5:00pm

Deputy Clerk, Superior Court of Guam

*Unified Interest v. Pacair Properties, Inc.*
Case No. CV0347-13
Decision and Order